Charles F. **MILLER**

v.

Theodore B. **SMITH**, Secretary of Revenue of the Commonwealth of Pennsylvania,

and

Robert Campbell, Supervisor, Financial Responsibility Division, Bureau of Motor Vehicles.

Civ. A. No. 36820.

United States District Court
E. D. Pennsylvania.

Dec. 31, 1964.

As Amended Jan. 4 and 8, 1965.

David H. Kubert, Philadelphia, Pa., for plaintiff.

Emil F. Goldhaber, Philadelphia, Pa., for defendant.

BIGGS, Chief Judge.

█ I am in receipt of a request from a United States District Judge for the Eastern District of Pennsylvania for the designation of two other judges to constitute, with him, a district court of three judges pursuant to Sections 2281 and 2284, Title 28, U.S.C., to hear and determine this case, which is alleged to involve the constitutional validity of 75 P.S. §§ 1413 and 1414, Article XIV, the "Motor Vehicle Safety Responsibility Provisions of the Pennsylvania Vehicle Code", which are asserted to be in conflict with Section 17 of the Bankruptcy Act, 11 U.S.C.A. § 35. A brief statement of the allegations of the complaint is necessary. The plaintiff, Miller, alleges that a truck belonging to him[1] was involved in a highway accident in Maryland on August 30, 1956, but that the truck was not being driven by Miller nor by any agent or employee of his but "was driven by a stranger who was permitted to drive the truck by * * * [an] employee of * * * [Miller] while in Maryland and without the consent or knowledge or approval" of Miller; that judgments totalling $57,783.92 were entered against Miller because of the accident in the United States District Court for the Eastern District of Pennsylvania on May 21, 1962, at C.A. No. 23016, in favor of the Ungolos, the plaintiffs in that action; that Miller thereafter filed an involuntary petition in bankruptcy in the United States District Court for the Eastern District of Pennsylvania, and that he scheduled the judgments referred to and was duly discharged as a bankrupt on June 19, 1963.

---

1. While there is no direct allegation that Miller was the owner of the truck, nonetheless there is a collateral statement in paragraph 9 of the complaint that it was "his", Miller's, "motor vehicle" that was involved in the Maryland accident.

The complaint further alleges that it was not the duty of the Clerk of the United States District Court for the Eastern District of Pennsylvania to forward to the Secretary of Revenue of the Commonwealth of Pennsylvania a certified copy of judgments entered against him but the Ungolos, as judgment creditors, requested the Clerk to do so; that the Clerk complied with this request in accordance with 75 P.S. § 1413, and that the Secretary of Revenue thereupon suspended Miller's right to operate an automobile or to register ownership thereof, and that these suspensions remain in full force and effect. The complaint also recites that no appeal is possible from this action of the Secretary of Revenue[2]; that the Secretary's act was mandatory and not discretionary. It appears from the record at C.A. No. 23016 that Miller took no appeal from the judgment of the United States District Court for the Eastern District of Pennsylvania against him and in favor of the Ungolos. The complaint also alleges that Section 1405 of the Pennsylvania Vehicle Code provides for reciprocity between various states of the United States and the State of Maryland has a reciprocity agreement with the Commonwealth of Pennsylvania but that no action was taken by the State of Maryland against Miller "under a section similar to Section 1405" of the Pennsylvania statute and that, therefore, the Commonwealth of Pennsylvania did not act against Miller on the basis of any reciprocity agreement.

The complaint further recites that Miller, at the time of filing his petition in bankruptcy, operated a one-man business selling live crabs on a retail basis and that in the course of his business it was necessary for him to drive to various shore points near Philadelphia in order to transport the crabs in a motor vehicle to his place of business[3]; that by reason of his failure to pay the Ungolo judgments based upon the "negligence of a stranger" in the operation of "his", Miller's, motor vehicle on highways outside of Pennsylvania, the action of the Commonwealth of Pennsylvania has deprived him of his livelihood "despite * * * [his] willingness to furnish proof of financial responsibility in the future"; that the bar against him is for life because his earning capacity is so meager that his lifetime earnings will not permit him to pay the judgments. He concludes by stating, as we have already pointed out, that by reason of the bar of his discharge under the Bankruptcy Act he is no longer obligated to pay these judgments, and that the refusal of the Secretary to reinstate him in the privileges which he seeks is unconstitutional. He prays for an injunction, mandatory in its nature, to compel the Secretary to restore his right to drive and his right to register an automobile in the Commonwealth of Pennsylvania.

The Motor Vehicle Safety Responsibility Provisions of the Pennsylvania Vehicle Code, 75 P.S. § 1401 et seq., and the particular sections, Sections 1413 and 1414, which Miller attacks, are in substance very similar to the pertinent Sections of the Safety Responsibility Act of the Utah Code Annotated, 1953, Section 41-12-1 et seq.,[4] which were considered in Kesler v. Department of Public Safety, 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641 (1962). In respect to the case at bar the Kesler case both raises a ghost and lays it. In that case the Supreme Court had before it, as we have indicated, pertinent provisions of the Safety Responsibility Act of the Utah Code similar to those in the case at bar, which, like those at bar, were attacked

---

2. But cf. Meyer License, 33 Dist. & Co. R. 2d 790 (1963).

3. Which, it is assumed, was Philadelphia.

4. The provisions of the pertinent sections, Section 120, et seq., of Article 66½ of the title, "Motor Vehicles" of the Annotated Code of Maryland, 1957, are more detailed but are not much broader in scope than the corresponding provisions of the Utah Act and the Pennsylvania Act.

See Kesler v. Department of Safety, 369 U.S. 153, at 165–168, 82 S.Ct. 807; see also id. at pp. 166–167 at n. 30, 82 S.Ct. 807.

on the ground that Section 17 of the Bankruptcy Act, 11 U.S.C.A. § 35, applicable through the Supremacy Clause, Article VI, rendered that case adjudicable only by a three-judge court designated by the chief judge of the circuit pursuant to Sections 2281 and 2284, 28 U.S.C. But the Supreme Court, having decided that the issues presented by the Kesler case were adjudicable only by a three-judge court, also decided that the Utah statute there under attack could stand despite the provisions of Section 17 of the Bankruptcy Act as brought into play by the Supremacy Clause. It appears then that the issue presented by the case at bar can raise no substantial question as to the constitutionality of the Pennsylvania statutes and falls within the ruling of Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152 (1933), as set out immediately hereinafter: "The existence of a substantial question of constitutionality must be determined by the allegations of the bill of complaint. Mosher v. City of Phoenix, 287 U.S. 29, 30 [53 S.Ct. 67, 77, 77 L.Ed. 148]; Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105 [53 S.Ct. 549, 550, 77 L.Ed. 1062]. The question may be plainly unsubstantial, either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court, as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.' Levering & Garrigues Co. v. Morrin, supra; Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288 [30 S.Ct. 326, 54 L.Ed. 482]; McGilvra v. Ross, 215 U.S. 70, 80 [30 S.Ct. 27, 54 L.Ed. 95]." Here no substantial issue as to the constitutionality of the Pennsylvania statutes remains to be adjudicated because the Supreme Court has already decided that issue unfavorably to Miller in the Kesler decision.[5] The issues as to whether Miller's right to operate a motor vehicle or to register ownership thereof were lawfully suspended may be decided by a single judge of the United States District Court for the Eastern District of Pennsylvania, assuming but not deciding, that that court has jurisdiction of the pending action and assuming further that the doctrine of abstention should not be applied.

But a major issue remains to be determined. Does a chief judge of a circuit possess the power, or the authority or the duty, when notified by a district judge of the circuit that an application has been made to him for an injunction in a case which, in the opinion of the district judge, requires adjudication by a three-judge court pursuant to Sections 2281 and 2284, Title 28 U.S.C., to refuse to designate such a court if in the opinion of the chief judge the notification of the district judge is erroneous and the designation of the two additional judges therefore should not be made. Or should the chief judge of the circuit, as a ministerial act, without considering the question of whether the case is one adjudicable by a three-judge tribunal, proceed to designate two other judges to make up the three-judge court? If the three-judge district court is erroneously designated and that court as constituted tries the case a great deal of the time and energy of judges, counsel and litigants may be wasted.[6] Of course, if the case

---

5. A paragraph of the letter of the District Judge to the Chief Judge states: "There is some doubt in my mind as to whether or not he [the plaintiff, Miller] is entitled to a three-judge court because of the case of Kesler v. Department of Public Safety, 369 U.S. 153 [82 S.Ct. 807, 7 L.Ed.2d 641]."

6. Before that tribunal can determine this jurisdictional fact it must be constituted by the chief judge; it must hold a hearing and render its decision. It must do

so even if it is utterly apparent that no substantial constitutional question as to the statute under consideration is presented under the ruling of Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933). On the other hand, there are cases in which it is difficult to determine whether the adjudication should be made by a three-judge court or a single-judge court. See Johns v. Allen, 231 F.Supp. 852 (D.C.Del., 1964). Sound judicial husbandry would seem to indicate a differentiation in the treatment

is not one adjudicable by a three-judge court ordinarily an appeal will not lie to the Supreme Court, 28 U.S.C. § 2101 (b), and the error of the three-judge tribunal in wrongfully assuming jurisdiction and adjudicating the case would have to be corrected by the appropriate court of appeals.[7]

██ It is clear that when a United States district judge has failed to effect the notification or to make the request required by Section 2284(1), the Supreme Court will grant mandamus. See Stratton v. St. Louis S. W. Railway Co., 282 U.S. 10, 16, 51 S.Ct. 8, 75 L.Ed. 135 (1930). But is there a remedy other than an appeal to the Supreme Court to aid the injured litigant in the case where a district judge has given notification to the chief judge of the circuit of the filing of a case which on the pleading requires adjudication by a three-judge court and the chief judge erroneously fails or refuses to act upon the notification by constituting such a court? I conclude that the remedy of mandamus is available and that the Supreme Court would issue such a writ to a chief judge who failed to act.[8]

██ But this brings us back to the underlying problem. Is the act of the chief judge of the circuit in designating two other judges to sit with the district judge to whom the application for a three-judge court was made a purely ministerial one as suggested in the preceding paragraph but one, or does the chief judge have the power and the duty, as does the district judge to whom the application was made, to determine whether or not the case upon which the district judge's notification is founded is a three-judge case in reality? The question may be stated in another way as follows. Is there the instant requirement of a three-judge court as soon as the certification is made by the district judge, however erroneously, to the chief judge of the circuit or does the chief judge of the circuit exercise a separate judicial function to determine, before constituting the three-judge court, whether the case is one adjudicable by a three-judge tribunal or whether it is one adjudicable by a single-judge district court? Such a court would, of course, when constituted, have authority to decide whether or not it had the power to determine its jurisdiction to decide the case: i. e., to determine whether or not the case is adjudicable by a three-judge court.

Some light is thrown on this fundamental issue by the development of the statute providing for three-judge courts. The original statute, the Act of March 4, 1911, 36 Stat. 1150, 1162–63,[9] put the

---

of the two kinds of cases just referred to. What has been said does not, of course, go to the issue of the nature of the power of the chief judge.

7. It should be noted that where a three-judge court has been convened to review the constitutionality of a statute, where a court so constituted was not required, under certain circumstances, the Supreme Court may see fit to treat the jurisdictional statement filed in support of the plaintiff-appellant's appeal to the Supreme Court as a petition for certiorari prior to the judgment of the court of appeals under 28 U.S.C. §§ 1254(1) and 2101(e), grant the petition and remand the case to the district court to enter a decree granting appropriate relief to the plaintiff-appellant. See Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962). Compare Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549,

7 L.Ed.2d 512 (1962). It should be noted, however, that in Turner v. City of Memphis, supra, the case had not proceeded to trial; that in Bailey v. Patterson, supra a three-judge court was not required though one had been convened. In Bailey v. Patterson the Supreme Court remanded the case to the end that the plaintiffs-appellants' claims should be adjudicated by a single-judge district court.

8. I have been unable to find any case in point.

9. Section 266 of the Act of March 4, 1911, 36 Stat. 1162, provides: "No interlocutory injunction suspending or restraining the enforcement, operation, or execution of any statute of a State by restraining the action of any officer of such State in the enforcement or execution of such statute, shall be issued or granted by any justice of the Supreme Court, or by any

power to create a three-judge court in the hands of the district judge to whom the application was made, as well as in the hands of a Circuit Justice or a circuit judge, depending on how the application was made. If the application was made to the district judge, he had the power to call to his assistance two other judges, one of whom could be the Circuit Justice, who might indeed have been the Chief Justice of the United States, a procedure which was eliminated in the 1948 revision of the Judicial Code.

The second relevant statute, the Act of October 22, 1913, 38 Stat. 219, 220, provided that no *interlocutory* injunction to suspend or restrain the enforcement of an order of the Interstate Commerce Commission should issue unless the application for the injunction was presented to a circuit or district judge and was heard and determined by three judges, of whom one at least was a circuit judge, and unless a majority of the three judges should concur in granting the application. The statute further provided that when such an application was presented to a circuit or district judge he should call to his assistance to hear and determine the application two other judges. As has been stated, the statute provided that one of the judges called would have to be a circuit judge, but the designation of the judges to sit with the judge to whom the application was made was left to the district judge if the application for a three-judge court was made to him.

But the third pertinent statute made a distinct change in the procedure of summoning a three-judge court where an injunction, either permanent or interlocutory, was sought to enjoin the enforcement or operation of an Act of Congress but it did not trench upon the procedure specified by the Act of March 4, 1911, 36 Stat. 1150, 1162–63, in respect to state statutes. I refer to the Act of August 24, 1937, 50 Stat. 751, 752, which provided, among other things, for a direct appeal to the Supreme Court of the United States from a United States district court where the constitutionality of an act of Congress was brought into question. Section 3 of the 1937 Act provided: "No interlocutory or permanent injunction suspending or restraining the enforcement, operation, or execution of, or setting aside, in whole or in part, any Act of Congress upon the ground that such Act or any part thereof is repugnant to the Constitution of the United States shall be issued or granted by any district court of the United States, or by any judge thereof, or by any circuit judge acting as district judge, unless the application for the same shall be presented to a circuit or district judge, and shall be heard and determined by three judges, of whom at least one shall be a circuit judge. When any such application is presented to a judge, he shall immediately request the senior circuit judge (or in his absence, the presiding circuit judge) of the circuit in which such district court is located to designate two other judges to participate in hearing and determining such application. It shall be the duty of the senior circuit judge or the presiding circuit judge, as the case may be, to designate immediately, two other judges from such circuit for such purpose, and it shall be the duty of the judges so designated to participate in such hearing and determination." It will be noted that for the first time in this Act the senior

district court of the United States, or by any judge thereof, or by any circuit judge acting as district judge, upon the ground of the unconstitutionality of such statute, unless the application for the same shall be presented to a justice of the Supreme Court of the United States, or to a circuit or district judge, and shall be heard and determined by three judges, of whom at least one shall be a justice of the Supreme Court, or a circuit judge, and the other two may be either circuit or

district judges, and unless a majority of said three judges shall concur in granting such application. Whenever such application as aforesaid is presented to a justice of the Supreme Court, or to a judge, he shall immediately call to his assistance to hear and determine the application two other judges: *Provided, however,* That one of such three judges shall be a justice of the Supreme Court, or a circuit judge. * * *"

circuit judge, now the chief judge of the circuit, is brought into the procedure and plays a decisive part.

The amendments effected by the Act of April 6, 1942, 56 Stat. 198–9, are not pertinent and for that reason they are not set out or discussed here.

The final pertinent changes to the procedure for· selecting three-judge courts were effected by Section 2284 of Title 28 of the United States Code which as presently constituted was enacted in 1948 as a complete revision of the prior statutes on the subject. The provisions of Section 2284 are, of course, substantive law but there are no substantial differences between the provisions of Section 2284 as it presently exists and those of Section 3 of the Act of August 24, 1937, 50 Stat. 752. The relevant portions of Section 2284 are as follows: *"Three-judge district court; composition; procedure.* In any action or proceeding required by Act of Congress to be heard and determined by a district court of three judges the composition and procedure of the court, except as otherwise provided by law, shall be as follows:

"(1) The district judge to whom the application for injunction or other relief is presented shall constitute one member of such court. On the filing of the application, he shall immediately notify the chief judge of the circuit who shall designate two other judges, at least one of whom shall be a circuit judge. Such judges shall serve as members of the court to hear and determine the action or proceeding."[10]

The second paragraph quoted, under "(1)" supra, must be read in the light of and must be deemed to be modified and governed by the first paragraph quoted. On the filing of the application to the district judge, when a proceeding has been filed which requires a three-judge court for its adjudication, the district judge must notify the chief judge of the circuit that there is a case which has the legal status specified by the statute. The district judge performs an act of judicial judgment and concludes as a matter of law that the pending case is one requiring three judges for its adjudication. He then notifies the chief judge of his decision and requests the chief judge to designate the two other judges who shall sit with him. The second paragraph quoted, "(1)", supra, provides that the district judge "shall" do these things when the proceeding requires it. It can be said with certainty that the district judge's functions in this regard are judicial rather than ministerial. See Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), and Turner v. City of Memphis, 369 U.S. 350, 353–354, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962).

A narrow reading of the second paragraph of Section 2284 "(1)" as quoted would require that the district judge "on the filing of the application" "shall" "immediately notify the chief judge of the circuit." This would reduce the course to be followed by the district judge to mere ministerial action. But it has been demonstrated in the preceding paragraph that his notifying of the chief judge requires the exercise of a judicial act on his part. He performs that act in the light of the record paragraph quoted. A narrow reading of the second paragraph, "(1)", would require the chief judge forthwith and in all events to designate two other judges. Again the word employed by Congress is "shall": *i. e.* the chief judge, on receiving the request of the district judge for a three-judge court, the notification, "shall designate two other judges." But this is too narrow a reading. The chief judge must perform his functions in the light of the first paragraph of Section 2284 quoted above: *i. e.*, he must, as a judicial act determine that the proceeding or case in which the three-judge court is sought to be invoked, is actually one requiring adjudication by a three-judge tribunal. There, there-

---

10. It will be observed that Section 2284, Title 28 U.S.C. has drawn the provisions for designating three-judge courts for determining the validity of Acts of Congress and State Statutes and orders of the Interstate Commerce Commission into a single statute providing uniformity of designation and procedure.

fore, must be two judicial acts performed before a three-judge court may be constituted: the first by the district judge; the second by the chief judge of the circuit.[11] The constituting of a three-judge court requires two separate acts of judicial judgment as indicated, neither merely ministerial. This conclusion, if it be correct, should effect a saving in the time and energy of litigants, of counsel and of judges.

I conclude for the reasons heretofore stated that this is not a case which requires a three-judge court to adjudicate it. I therefore decline to designate two judges to sit with the judge to whom the application for a three-judge court was made. If I am in error the remedy, I think, should be by way of a writ of mandamus directed by the Supreme Court to me as the chief judge of the circuit. If the district judge to whom the application was made should agree with the view expressed in this opinion I can perceive no reason why he cannot now rescind the request he made to me for a three-judge tribunal, Eastern States Petroleum Corporation v. Rogers, 105 U.S.App.D.C. 219, 265 F.2d 593, 597 (Prettyman, Ch. J., D.C.Cir., mandamus denied, 361 U.S. 805, 80 S.Ct. 93, 4 L.Ed.2d 56 (1959), and, having done so, proceed to dispose of the case precisely as he would have done had he determined in the first instance that the case at bar was not one requiring the interposition of a three-judge tribunal.

■ An alternative course for me to pursue in order to avoid a possible mandamus would be for me to designate forthwith two judges to sit with the district judge to whom the application for a three-judge tribunal was made in this case. If it appeared to the district court as thus constituted that the cause was one not cognizable by a three-judge tribunal, the court could then dissolve itself as a three-judge district court and remit the case to the single judge to whom the application was made for his sole disposition. That this practice is permissible is, I think, well established. See Two Guys from Harrison-Allentown, Inc. v. McGinley, 266 F.2d 427, 432–433 (3 Cir. 1959). But if the appeal was to the Court of Appeals of this Circuit and the case is in reality one which is cognizable only by a three-judge tribunal, the Court of Appeals could decide only the very limited issue as to whether or not it had jurisdiction to entertain and adjudicate the appeal and could only vacate an improvident order of the single district judge tribunal as was done in the Two Guys case, supra. Such a course would hardly prove helpful here. If the case now pending in the district court is in fact a three-judge case and the district judge had refused to request me, as chief judge of the circuit, to designate two additional judges to constitute a three-judge tribunal, relief to the suitor would be by way of mandamus directed to the district judge from the Supreme Court of the United States. The waste of the time and energy of litigants, of counsel and of judges will occur in those cases where no appeal is taken until after the case is tried and where constitutional issues involving federal or state statutes are at issue. The waste of time and energy may be very considerable for the trial court may reach a final judgment only to discover later that it was without jurisdiction to determine the case. The case at bar, of course, has not been tried.

On consideration of all of the factors and being of the opinion that the chief judge of the circuit has the duty to determine judicially whether the case is one which is adjudicable by a three-judge tribunal, as had the district judge to

---

11. No pertinent legislative history has been found which throws any light on the difficult questions of statutory construction presented. It can be argued with some force that the senior circuit judge of the circuit (now the chief judge of the circuit) was brought into the procedure by the Act of August 24, 1937, because he would have immediately at hand information as to which circuit judge or judges of his circuit would be available for three-judge court duty. The argument is not persuasive in the light of the terms of the statute.

whom the application is made, I conclude, with all respect and esteem for the District Judge who made the request of me, that the action is not one cognizable by a three-judge tribunal, and further that the ends of justice would be best served by my declining to designate two additional judges to complete a three-judge tribunal in this case. See Kirk v. Board of Education, 236 F.Supp. 1020 (D.C. E.D.Pa. 1964). Consequently, an order to that effect will be filed in the district court concurrently with this opinion.