**Clarence JACKSON, Petitioner,**

v.

**Hon. Emett C. CHOATE, U. S. District Judge, Southern District of Florida, Respondent.**

**Misc. No. 1071.**

United States Court of Appeals
Fifth Circuit.

Nov. 29, 1968.

———◆———

Bruce S. Rogow, Miami, Fla., for petitioner.

Before JOHN R. BROWN, Chief Judge, BELL, Circuit Judge and HOOPER, District Judge.

PER CURIAM:

■ The application for mandamus to require certification by Judge Choate to the Chief Judge for the designation of a 3-Judge Court is moot by virtue of the action of the Chief Judge as reflected in the Appendix.

Dismissed.

1. Peters v. Rutledge, 5 Cir., 1968, 397 F.2d 731, 738 n. 22; Boyer v. Orlando, 5 Cir., 1968, 402 F.2d 966, 4 Crim.L.R. 1028, 2132. This problem is developed at length in the Senate Report of Hearings on the Operation of Procedures For The Temporary Assignment of Federal Judges,

APPENDIX

IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

CLARENCE JACKSON, ET AL,
　　　　　　　　Plaintiffs,
v.　Civil Action No.
　　68–568–CIV–EC

THE DEPARTMENT OF PUBLIC WELFARE OF THE STATE OF FLORIDA, ET AL
　　　　　　　　Defendants.

Before JOHN R. BROWN, Chief Judge, United States Court of Appeals for the Fifth Circuit.

JOHN R. BROWN, Chief Judge.

The Plaintiffs formally requested Judge Choate, before whom this proceeding was pending, to certify the case to the Chief Judge of the Circuit to convene a 3-Judge District Court pursuant to 28 U.S.C.A. §§ 2281, 2284. Judge Choate declined to do so "on the basis that no substantial constitutional question is involved." Thereafter the Plaintiffs in Misc. 1071 sought mandamus from the Fifth Circuit to compel Judge Choate to certify the matter to the Chief Judge. It came to my attention since in the submission of non-calendared matters it was routinely assigned by the Clerk under established procedures to a panel of which I was a member.

■ As the one thing we do not need in this day of exploding everything—including exploding dockets [1]—is more cases to hear, this is the time for exploiting to the utmost all resources of judicial inventiveness to enhance pro-

1968, before the Subcommittee on Improvements in Judicial Machinery, 90th Cong., 2d Sess. at 64–80, (1968), Crisis In Courts of Appeals, at 80–84 (1968); and remarks of Senator Tydings, Chairman, October 8, 1968, 114 Cong.Rec.S. 12237–39.

ductivity.[2] On this approach there is no need for the writ of mandamus where the Chief Judge is a member of the panel and has direct personal knowledge of the pleadings and the request for the convening of a 3-Judge Court. Consequently I enter the special order,[3] now frequently used, designating a 3-Judge Court and stating that whether the question presented is properly a 3-Judge matter is initially for the determination of the 3-Judge Court.

To me, the problem is not simply one of ultimate power or its reflex of duty and responsibility. Hence I do not even begin to question the soundness of the extended treatment developed by Judge Biggs (then Chief Judge of the Third Circuit) concerning the power and duty of the Chief Judge to ascertain whether a case necessitates the convening of a 3-Judge court.[4] Theoretically, this solo travail should be the indispensable first step. But as a practical matter in a world of practical challenges in judicial administration it has little to offer especially in this Circuit where we have so very many requests for 3-Judge Courts.[5]

Except for cases on which there can be no doubt at all, the alternatives to certification and the constituting of a 3-Judge court are unsatisfactory and administratively disadvantageous with no compensating redeeming virtue of a substantive kind. Thus, if the District Judge does not request the Chief Judge of the Circuit to constitute a 3-Judge Court he may face a writ of mandamus in the Court of Appeals—an awkward and often time-consuming appellate device at best. If he does request a 3-Judge Court and the Chief Judge refuses to constitute the 3-Judge Court then the Chief Judge is subject to mandamus in the Supreme Court—an even more perilous route considering the overburdens of that tribunal. If without such intervening peremptory mandamus proceedings the District Judge undertakes to hear the question as a 1-Judge Court, then on appeal, the Court of Appeals will

---

2. Bros., Inc. v. W. E. Grace Mfg. Co., 5 Cir., 1965, 351 F.2d 208, 209 n. 1, cert. denied, 1966, 383 U.S. 936, 86 S.Ct. 1065, 15 L.Ed.2d 852; Juelich v. United States, 5 Cir., 1963, 316 F.2d 726; Anderson v. United States, 5 Cir., 1963, 318 F.2d 815; Bartone v. United States, 5 Cir., 1963, 317 F.2d 608, reversed, per curiam, 375 U.S. 52, 84 S.Ct. 21, 11 L.Ed.2d 11; Rees v. Peyton, 1966, 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed. 2d 583; Whalen v. United States, 5 Cir., 1966, 367 F.2d 468; Progner v. Eagle, 4 Cir., 1967, 377 F.2d 461.

3. This order was formulated and originally published in Smith v. Ladner, S.D.Miss., 1966, 260 F.Supp. 918.

   After typical introductory formal recital it provides:

   "This designation and composition of the three-judge court is not a prejudgment, express or implied, as to whether this is properly a case for a three-judge rather than a one-judge court. This is a matter best determined by the three-judge court as this enables a simultaneous appeal to the Court of Appeals and to the Supreme Court without the delay, awkwardness, and administrative insufficiency of a proceeding by way of mandamus from either the Court of Appeals, the Supreme Court, or both, directed against the Chief Judge of the Circuit, the presiding District Judge, or both. The parties will be afforded the opportunity to brief and argue all such questions before the three-judge panel either preliminarily or on the trial of the merits, or otherwise, as that Court thinks appropriate."

   Of course this merely makes explicit the inherent power and duty of a court to determine judicially its own jurisdiction.

4. Miller v. Smith, E.D.Pa., 1965, 236 F. Supp. 927.

5. As of November 1, 1968, there were 100 3-judge cases pending in the Fifth Circuit, distributed as follows:

   | | |
   |---|---|
   | Alabama | 11 |
   | Florida | 5 |
   | Georgia | 22 |
   | Louisiana | 27 |
   | Mississippi | 19 |
   | Texas | 16 |
   | **TOTAL** | **100** |

   In the 15 months since July 1967 I have constituted 109 3-Judge Courts.

have to reverse it for a retrial on the merits by a 3-Judge Court[6] unless it can satisfy itself that under the restrictive standards enunciated by the Supreme Court there is no substantial question of constitutional validity or invalidity presented.[7] The prospect of this judicial travail with all of its built-in difficulties becomes all the more wasteful when it is kept in mind that the decision by the one group of three Judges—each of whom is eligible to participate in the remanded 3-Judge trial—is whether three Judges, not just one should initially hear and determine facts and law.[8] Hence, unless it is determined that it was an open and shut case three Judges must pass on the merits even though it means that three more must do so again.

In this day and time of dynamic expansion of constitutional principles and their application to new and sometimes unheard of situations it takes judicial prescience of a Delphic order to say with certainty that the attack is insubstantial. It is the better course—certainly from an administrative standpoint—to forego the doubts, constitute a 3-Judge Court, and allow that court to determine initially this and the other issues.

To begin with it does not necessarily mean the expenditure of three times the judicial energy. These cases, most often, involve a pure question of law which can readily be determined on briefs without the Judges physically assembling in one place to convene a court session formally.[9]

Frequently in resolving the threshold issue of substantiality—i. e., the need for a 3-Judge Court—the Court has to go to the very merits of the case. Where that preliminary, albeit perhaps decisive, question becomes shrouded in doubt, indeed the slightest doubt, then the Judges may construct the opinion and decree in a way to give trial court finality, no matter which way the appellate review thereafter goes. Assuming a conclusion that it is a one-Judge, not a three-Judge matter, all of the Judges may expressly indicate a joinder in (a) that holding and also (b) the holding on the merits by the single Judge to whom the case is thereby automatically remanded. On appeal to the Court of Appeals which brings into review the merits of the decree by the single-Judge and the correctness of the 3-Judge order dissolving the 3-Judge Court, the Court of Appeals has the entire case before it. If the Court of Appeals finds the question insubstantial it would, of course, affirm the refusal to request a 3-Judge Court and consistent with that holding it could affirm, or for that matter in some situations reverse on the merits. If the Circuit Court finds that the case was properly one for the 3-Judge Court, it would have to reverse the order dissolving the 3-Judge Court without examining the merits of the two orders—one by the single Judge, and one by the 3 Judges joining in the single Judge order (or vice versa). This would technically then call for remand to the District Court to permit the direct, exclusive appeal to the Supreme Court. 28 U.S. C.A. § 1253. But the remand would not be for a 3-Judge trial or hearing since one will have been had. It would require nothing more formidable than the confirmatory reentry of the earlier "conditional" joinder order and thus the "pro-

---

**6.** See Gong v. Kirk, 5 Cir., 1967, 375 F.2d 728 in which the Court had to send back a congressional redistricting case for a 3-Judge trial. See also Idlewild Bon Voyage Liquor Corp. v. Epstein, 1962, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794.

**7.** The Court of Appeals has faced this often difficult analysis twice within recent months. See Davis v. Francois, 5 Cir., 1968, 395 F.2d 730 [May 28, 1968] and Kirkland v. Wallace, 5 Cir., 1968, 403 F.2d 413 [October 22, 1968].

**8.** This is well developed in Judge Godbold's extended dissent in *Kirkland*, note 7 supra.

**9.** This was done in Wilson v. City of Port Lavaca, S.D.Tex., 1968, 285 F.Supp. 85, vacated 391 U.S. 352, 88 S.Ct. 1502, 20 L.Ed.2d 636.

cedure would be pruned of much of its burdensome character"[10] of another group of three Judges having to determine thereafter a cause already substantially determined by a group of three Judges.[11] And, of course, the stronger the doubt about insubstantiality the greater is the need for, and advantage of, constituting a 3-Judge Court.[12]

Order in accordance with opinion.

### ORDER

It having come to my attention as a member of a panel of the Fifth Circuit in Jackson v. Choate, 5 Cir., 1968 [Misc. No. 1071] seeking mandamus, that there is, or may be, brought in question the constitutionality of certain statutes of Florida or practices thereunder and for the reasons set out in the opinion filed herein, it appears that a 3-Judge Court should be constituted, I, John R. Brown, Chief Judge of the Fifth Circuit, hereby designate the Honorable David W. Dyer, United States Circuit Judge, and the Honorable William O. Mehrtens, United States District Judge for the Southern District of Florida, to serve with Judge Choate as members of, and with him to constitute the said Court to hear and determine the action, which is now pending before him.

This designation and composition of the 3-Judge Court is not a prejudgment, express or implied, as to whether this is properly a case for a 3-Judge rather than a one-Judge Court. This is a matter best determined by the 3-Judge Court as this enables a simultaneous appeal to the Court of Appeals and to the Su-

preme Court without the delay, awkwardness, and administrative insufficiency of a proceeding by way of mandamus from either the Court of Appeals, the Supreme Court, or both, directed against the Chief Judge of the Circuit, the presiding District Judge, or both. The parties will be afforded the opportunity to brief and argue all such questions before the 3-Judge panel either preliminarily or on the trial of the merits, or otherwise, as that Court thinks appropriate.

---

10. Note, The Three-Judge District Court: Scope and Procedure under Section 2281, 77 Harv.L.Rev. 299, 310–11 (1963) cited in Kirkland v. Wallace, 5 Cir., 1968, 403 F.2d 420 dissent.

11. Nothing in Wilson v. City of Port Lavaca, 1968, 391 U.S. 352, 88 S.Ct. 1502, 20 L.Ed.2d 636 or more recently, in Mengelkoch v. Industrial Welfare Comm., 1968, 393 U.S. 83, 84, 89 S.Ct. 60, 21 L.Ed.2d 215 [October 28, 1968] is to the contrary or suggests a contrary result, either substantive or administrative. The problem there posed which twice led to vacating orders to permit a belated

appeal to the Court of Appeals arose out of errors by lawyers, not Judges. In *Wilson* no protective appeal at all was lodged in the Court of Appeals and in *Mengelkoch*, although an appeal was lodged it was from the single-Judge, not the 3-Judge, order. The recurrence of such a technical omission is obviated completely by a *Wilson* joinder order with timely notice of appeal with adequate specificity and the designation of a proper record.

12. This is especially true when factual inquiry and determination are required.