Marianne BJARSCH and Werner Kleiner, Plaintiffs,

v.

S. Samuel DiFALCO and Samuel J. Silverman, Surrogates of the County of New York, and Bank of North America, as Trustee under the Last Will and Testament of Hanna Elizabeth Cosgrove, Deceased, Defendants.

No. 68 Civ. 4216.

United States District Court
S. D. New York.

April 7, 1969.

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiffs, Martin Popper, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., of the State of New York, for defendants S. Samuel DiFalco and Samuel J. Silverman, Warren M. Goidel, Ass't Atty. Gen., New York City, of counsel.

Cole & Deitz, New York City, for defendant Bank of North America.

## OPINION

HERLANDS, District Judge:

Plaintiffs have moved for the convening of a three-judge court pursuant to 28 U.S.C. §§ 2281, 2284 (1964). The motion is granted because a substantial question has been raised as to the constitutionality of a provision of a New York State statute. Appropriate reference to the Chief Judge of the Circuit will be made forthwith.

Plaintiffs are the remaindermen of a trust established under the last will and testament of Hanna Elizabeth Cosgrove, whose estate is subject to the supervision of the New York County Surrogate's Court. The life beneficiary of this trust died; and plaintiffs are now entitled, by the terms of the trust, to immediate distribution of the remainder. They are, however, residents of the Russian Occupied Zone of Germany (East Germany), to which checks drawn on the United States Treasury may not be transmitted by virtue of 31 C.F.R. § 211.2 (1968).

### The Challenged Statute

Section 2218 of the New York Surrogate's Court Procedure Act [1] establishes

---

1. The full text of the statute, as amended effective June 22, 1968, reads as follows:

"§ 2218. Deposit in court for benefit of legatee, distributee or beneficiary

1. (a) Where it shall appear that an alien legatee, distributee or beneficiary is domiciled or resident within a country to which checks or warrants drawn against funds of the United States may not be transmitted by reason of any executive order, regulation or similar determination of the United States government or any department or agency thereof, the court shall direct that the money or property to which such alien would otherwise be entitled shall be paid into court for the benefit of said alien or the person or persons who thereafter may appear to be entitled thereto. The money or property so paid into court shall be paid out only upon order of the surrogate or pursuant to the order or judgment of a court of competent jurisdiction.

(b) Any assignment of a fund which is required to be deposited pursuant to the provisions of paragraph one (a) of this section shall not be effective to confer upon the assignee any greater right to the delivery of the fund than the assignor would otherwise enjoy.

2. Where it shall appear that a beneficiary would not have the benefit or use or control of the money or other property due him or where other special circumstances make it desirable that such payment should be withheld the decree may direct that such money or property be paid into court for the benefit of the beneficiary or the person or persons who may thereafter appear entitled thereto. The money or property so paid into court shall be paid out only upon order of the court or pursuant to the order or judgment of a court of competent jurisdiction.

3. In any such proceeding where it is uncertain that an alien beneficiary or fiduciary not residing within the United States, the District of Columbia, the Commonwealth of Puerto Rico or a territory or possession of the United States would have the benefit or use or control of the money or property due him the burden of proving that the alien beneficiary will receive the benefit or use or control of the money or property due him shall be upon him or the person claiming from, through or under him."

a procedure, applicable to certain specified situations, for the deposit into court of funds or property for the benefit of the legatee, distributee, or beneficiary of a decedent's estate being probated in the surrogate's court.

Subdivision 1(a) requires the surrogate to "direct" the deposit into court of money or property of an alien legatee, distributee, or beneficiary who is domiciled or resident within a country to which, "by reason of any executive order, regulation or similar determination," funds of the United States Treasury may not be transmitted. The money or property so deposited into court "shall be paid out only upon order of the surrogate or pursuant to the order or judgment of a court of competent jurisdiction."

Subdivision 1(b) prevents the assignee of such funds from acquiring any greater right than the alien to have the funds released.

Subsection 2 provides that, where it "shall appear that a beneficiary would not have the benefit or use or control of the money or other property due him or where other special circumstances make it desirable that such payment should be withheld", the surrogate "may direct that such money or property be paid into court" subject to the same restrictions upon release found in subsection 1.

Subsection 3 places "the burden of proving" that he would receive the benefit, use or control of the money or property upon the distributee where he is an alien not residing within the United States or its territories and "where it is uncertain" that he would have the benefit, use or control of such money or property.

*Plaintiffs' Allegations*

The complaint alleges that section 2218, in its entirety, is unconstitutional, on its face and in application, because it encroaches upon and impairs the effective exercise of the power to conduct foreign relations and to regulate foreign commerce which is constitutionally vested in the federal government to the exclusion of the State of New York.

The complaint also alleges that subsection 1((a) and (b)), independently, is unconstitutional on its face as an infringement on the foreign affairs power, and for the additional reason that it deprives plaintiffs of their property, and the use and enjoyment of the same, in violation of the due process and equal protection clauses of the Constitution. (¶ 14).

The complaint seeks:

(1) the convening of a three-judge court;

(2) a declaration that the entire statute is unconstitutional on its face and as it has been applied;

(3) an independent declaration that subsection 1((a) and (b)) is unconstitutional on its face;

(4) a permanent injunction restraining defendants from denying plaintiffs the right to their benefits from the estate of Hanna Elizabeth Cosgrove; and

(5) ordering defendants (and their successors in office) to pay to plaintiffs the sums that they are entitled to receive.

Though the complaint does not explicitly request that an injunction issue restraining the "enforcement, operation or execution" of a state statute, *see* 28 U.S. C. § 2281 (1964), such request is implicit in the complaint and explicitly contained in plaintiffs' attorney's moving affidavit. Affidavit of Martin Popper, sworn to December 12, 1968, ¶ 2.

I.

Preliminarily, the Court is met with defendants'[2] contention that the Court

---

2. Defendant Bank of North America is a mere stakeholder and has no other interest in this action. It has neither filed any papers in opposition to this motion nor appeared at oral argument. Accordingly, references to "defendants" include only

lacks jurisdiction to convene a three-judge panel because, as yet, no justiciable controversy has arisen between the parties. Defendants refer to the fact that plaintiffs did receive advance payments on their legacies upon their application, in May, 1968 and have not seen fit, since that time, to make further applications for payment. Defendants assert that, as a result, the statute has not yet affected plaintiffs.

■ This argument has no merit. The statute became effective June 22, 1968 and, undoubtedly, immediately governed all future distribution to legatees coming within its terms. Plaintiffs now are entitled to funds subject to the supervision of the New York County Surrogate's Court, the disposition of which funds is governed by the statute. Section 2218(1) prevents the outright payment to plaintiffs of their funds and mandates that their legacies be deposited into court. The statute does not contain any authorization for the surrogate to act otherwise. Thus, there appears to be *no possibility* that the statute will not affect plaintiffs, directly and adversely. Accordingly, the fact that a futile application to the surrogate, seeking distribution, was not made, and the fact that the funds in question have been paid into the surrogate's court, to await the outcome of this lawsuit, do not mean that there is no present controversy between the parties. *Cf.* Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 51 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000 (1937).

### II.

The Supreme Court has defined the role of a district judge in deciding a motion such as that presently made by plaintiffs. "When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute." Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962).

The second and third of the inquiries described by the Supreme Court present no bar to the convening of the three-judge panel. As noted above, plaintiffs, in fact, seek to restrain the enforcement of a state statute on the grounds of its alleged unconstitutionality. This meets the requirements of 28 U.S.C. § 2281. See Zemel v. Rusk, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965); Currie, The Three-Judge District Court in Constitutional Litigation, 32 U.Chi.L.Rev. 1, 19 (1964).

■ The complaint, when taken in conjunction with the undisputed facts, must also be deemed to present a proper basis for injunctive relief. Though there is no allegation of immediate irreparable harm to plaintiffs should enforcement not be enjoined, the operation of the statute would prevent plaintiffs from obtaining use and enjoyment of their funds for an indefinite period of time, resulting in an immeasurable injury which cannot be compensated by money damages. Any other questions regarding the appropriateness of equitable relief in the particular case should be heard and determined by the three-judge court, and not by the single district judge. *See* Note, The Three-Judge District Court: Scope and Procedure Under Section 2281, 77 Harv.L.Rev. 299, 309 (1963).

### III.

■ Thus, the Court now considers the substantiality of the alleged federal claims. The Court is of the opinion that, upon analysis, at least some of the federal questions raised by the complaint are substantial in nature and that none of the others is so free from doubt as to

the defendants DiFalco and Silverman, the New York County Surrogates, who are being sued in their official capacity, and are represented here by the Attorney General of the State of New York.

its insubstantiality that the three-judge court—which must be constituted in any event—should not be given the opportunity to rule, initially, on whether a three-judge court is required for their ultimate determination. See Jackson v. Dept. of Public Welfare of Florida, 296 F.Supp. 1341, (S.D.Fla.1968) (Brown, Ch.Cir.J.). In particular, the Court concludes that the allegations that § 2218(1) is violative of the due process and equal protection clauses are substantial.

## A. Due Process

It is not disputed that plaintiffs have been held to be the lawful beneficiaries of a valid trust established under the last will and testament of Hanna Elizabeth Cosgrove, and that under the terms of this trust they now have a right to receive the entire proceeds. As detailed above, however, plaintiffs are residents of the Russian Occupied Zone of Germany to which checks or warrants drawn against funds of the United States may not be transmitted. 31 C.F.R. § 211.2 (1968). Hence, the surrogate is mandated by the specific terms of § 2218(1)(a) to direct the deposit of plaintiffs' funds into court, subject to further court order. The statute does not provide any opportunity for plaintiffs to be heard or to prove that they will have the benefit, use, and control of their property, should it be distributed to them, before the surrogate orders the funds to be deposited—this despite the fact that the purpose of the deposit is to safeguard the alien's inheritance until such time when the beneficiary might, in fact, gain full benefit, use, and control of the funds. E. g., In re Geiger, 7 N.Y.2d 109, 111, 195 N.Y.S.2d 831, 833, 164 N.E.2d 99, 100 (1959).

It is doubtful whether any such opportunity can be inferred from either the statutory language or legislative history. Subsection 1 does not require the surrogate to make any findings as to benefit, use, or control, thereby offering the legatee a viable opportunity to be heard. It appears to legislate an absolute prohibition against distribution of the funds, conditioned upon the existence of a fed-

eral regulation or executive order of a particular nature. Under these circumstances, any opportunity granted would be hollow because, apparently, it could not alter the statutory mandate.

Nor can a contrary inference be drawn from subsection 3, which provides, in substance, that where it is "uncertain" whether a legatee will receive the benefit, use, or control of his funds, he has the affirmative burden of so proving. True, subsection 3 contains the phrase "in such proceedings"; and, because of its physical location as the last subsection in the statute, it might, at first blush, be arguably taken as referring to both subsections which precede it. From this, it may be then argued that the opportunity for a hearing is provided. Subsection 3, however, is applicable only where it is "uncertain" whether the alien legatee will receive the benefit, use, or control of any funds distributed to him. And since subsection 1 does not create a rebuttable "uncertainty" necessitating an evidentiary hearing—but, rather, is a flat proscription upon distribution—subsection 3 has no relevance to the issue now before the Court.

The Court also finds little in the legislative history from which an inference may be drawn as to the availability of an evidentiary hearing. Indeed, so to construe subsection 1 would do violence to the apparent legislative purpose in adding that paragraph to the statute in June, 1968.

The amendment was enacted at the request of the Attorney General, as part of his legislative program. The Memorandum of the State Department of Law, which was submitted to the Legislature, clearly indicates that the amendment was "designed to meet some of the views expressed by the United States Supreme Court in Zschernig v. Miller, 88 S.Ct. 664, 389 U.S. 429 [19 L.Ed.2d 683] [1968] * * *" 1968 McKinney's Session Laws at p. 2326. In that case, the Supreme Court held unconstitutional, as applied, an Oregon statute which contained a "benefit, use or control" provi-

966

sion, because Oregon judges, in the course of making the inquiries required by that statute, unduly interfered with the exercise of the exclusively federal foreign affairs power. It is thus obvious that the amendment sought to preclude the application of the *Zschernig* rationale to the New York statute by eliminating the need for New York surrogates to conduct any hearing or make any determination in cases where the alien-legatees are residents of countries whose political ideology and system of government are most likely to provoke derogatory comments or findings based, impermissibly, on foreign policy factors.

█ It is a fundamental principle that the procedural due process which must accompany any deprivation by the State of any person's property includes the right of the person so affected by the State's action to be heard, through counsel if he so desires, and to present evidence in his own behalf. *E. g.,* Powell v. Alabama, 287 U.S. 45, 68, 53 S.Ct. 55, 64, 77 L.Ed. 158, 84 A.L.R. 527 (1932) ("It never has been doubted by this court, or any other as far as we know, that notice and hearing are preliminary steps essential to the passing of an enforceable judgment * * * "); Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914) ("The fundamental requisite of due process of law is the opportunity to be heard."); Holden v. Hardy, 169 U.S. 366, 389–390, 18 S.Ct. 383, 387, 42 L.Ed. 780 (1898) ("It is sufficient to say that there are certain immutable principles of justice which inhere in the very idea of free government which no member of the Union may disregard, as that no man shall be condemned in his person or property without due notice, and an opportunity to be heard in his own defense.").

█ Even if it is within the police power of a State, in the interest of protecting its residents who leave property to aliens residing abroad, to prevent the payment of a legacy where it is likely that the legatee will not have the full benefit, use, or control of the property

so received, *see* In re Braier, 305 N.Y. 148, 111 N.E.2d 424, appeal dismissed sub nom. Kalmane v. Green, 346 U.S. 802, 74 S.Ct. 32, 98 L.Ed. 334 (1953), it would appear to be beyond the State's police power legislatively to declare conclusively that residents of certain countries will not receive the full benefit, use, or control of funds distributed to them, without permitting those affected to contest this factual determination in an evidentiary hearing. Clearly a State could not enact by legislation a factual presumption that resulted in a loss of property, without providing an opportunity to rebut the presumption. *See* Anderson National Bank v. Luckett, 321 U.S. 233, 243, 64 S.Ct. 599, 88 L.Ed. 692, 151 A.L.R. 824 (1944) (A presumption of "abandonment" of bank accounts, with consequent escheat to state, is constitutional where depositor has opportunity to claim funds thereafter.). And, it would seem, that a State may not, for the same reason, prevent, indefinitely, the enjoyment of property, by means of a conclusive presumption, without furnishing one affected the opportunity to rebut. *Cf.* Sardino v. Federal Reserve Bank, 361 F.2d 106, 111 (2d Cir.), *cert. denied,* 385 U.S. 898, 87 S.Ct. 203, 17 L.Ed.2d 130 (1966). Indeed, the New York Court of Appeals, in upholding the constitutionality of what are now subsections 2 and 3 of section 2218, specifically stated that those provisions were not unconstitutional because plaintiff there would be given a hearing, enabling submission of evidence on the question of benefit, use, or control, upon an application for an order permitting the withdrawal of funds deposited by the surrogate. In re Braier, *supra,* 305 N.Y. at 158–159, 111 N.E.2d 424.

This is not to say that the question is free from doubt. The New York Court of Appeals in *Braier* stated that, in its view, the statutory scheme does not result in a "deprivation" because the deposit is for the benefit of the alien, and was intended to protect the legatee's property and to insure its receipt. Thus,

it may be that while the alien's rights are affected, they are not so adversely affected as to constitute a deprivation of property which would require a hearing. Or, it may be that the statute will be found constitutional because the availability of a hearing is found to be implicit in the statute when it provides for the release of funds by order of the surrogate or another court of competent jurisdiction. However, these issues do not render the claim insubstantial insofar as 28 U.S.C. § 2281 is concerned, for they deal with the ultimate merits of plaintiffs' due process claim and, therefore, must be considered by the three-judge panel, and not by the single district judge. Idlewild Bon Voyage Liquor Corp. v. Epstein, *supra,* 320 U.S. at 715, 82 S.Ct. 1294, 8 L.Ed.2d 794.

### B. *Equal Protection*

■ There is also a substantial question of whether section 2218(1) when set against the provisions of subsections 2 and 3, violates the equal protection clause of the fourteenth amendment. The effect of subsection 1 is to deny aliens from certain countries the right to receive payment of their legacies though they can show that they will have full benefit, use, and control of these funds, while allowing aliens from other countries to obtain their legacies upon making such proof. This difference in treatment may be an unconstitutional discrimination because the determination of who falls within which category of persons may be based on factors unrelated to the purpose of the classification. Indeed, it is not even the State, in this case, which ultimately chooses which aliens are permitted to prove benefit, use, and control and secure the release of their funds. The statute classifies aliens on the basis of federal determinations—decisions which are made for a different purpose, on the basis of foreign policy factors which are not necessarily related to the protection of decedents' estates and aliens' legacies. Equal protection is not afforded if discrimination is based on grounds unrelated to, or unreasonable in light of, a statute's pur-

pose. *E. g.,* McLaughlin v. Florida, 379 U.S. 184, 191, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). Thus, this claim, as well, is substantial.

### C. *Intrusion Upon Foreign Affairs Power*

As the Court already has indicated, none of the other claims is so free from doubt as to its substantiality as to warrant this Court's refusal to submit all of the claims to the three-judge panel for consideration.

■ The test for substantiality, in this context, is that enunciated by the Supreme Court in Ex Parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152 (1933): "The question may be plainly unsubstantial, either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.' "

■ Measured against this standard, plaintiffs' claims that the statute is an unconstitutional intrusion into the exclusively federal, foreign affairs domain are not insubstantial. The Supreme Court, in Goldstein v. Cox, 389 U.S. 581, 88 S.Ct. 694, 19 L.Ed.2d 781 (1968) thought the claim that § 2218(2) and (3) were unconstitutional on these grounds sufficiently substantial to warrant the grant of certiorari and vacatur of the Second Circuit Court of Appeals' judgment affirming the denial of a motion to convene a three-judge court. The fact that the three-judge panel convened by the Court of Appeals on remand (391 F.2d 586) has heard and determined, adversely, those plaintiffs' motion for summary judgment, does not render these plaintiffs' claims insubstantial.

First, while the three-judge court in Goldstein v. Cox intimated that the statute was unconstitutional on its face, that question is not foreclosed by any decision of the Supreme Court. Whether the panel which will be convened in this case

will decide this issue independently or will rule it foreclosed by virtue of the conclusion reached by the panel in Goldstein v. Cox is an issue that the panel will decide.

Second, the three-judge court in Goldstein v. Cox did not reach the merits of the claim that the statute was unconstitutional as applied because it held that the record was inadequate to justify grant of plaintiffs' motion for summary judgment on the issue. This Court may not deny plaintiffs their opportunity to litigate this issue as "unnecessarily duplicative." Defendants' Memorandum of Law at 11, even though the Court recognizes that plaintiffs' attorney submitted a brief in that case, as *amicus curiae*, and that the complaint alleged that the action was being brought as a class action.

Third, subsection 1 was not even before the court in Goldstein v. Cox, as it was inapplicable to the plaintiffs in that case, and thus plaintiffs' claim here, respecting that subsection, has never been judicially ruled upon.

## IV.

■ Defendants' contention that the doctrine of abstention is clearly applicable to this case and that, therefore, the claims are insubstantial is without merit. Abstention is an issue that deals with the merits of the claim; consequently, it must be heard by the three-judge panel, and not by the single district judge. *E. g.*, Idlewild Bon Voyage Liquor Corp. v. Epstein, supra; Samuels v. Mackell, 288 F.Supp. 348 (S.D.N.Y. April 9, 1968); *cf.* England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 416, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); *see also* Note, The Three-Judge District Court: Scope and Procedure Under Section 2281, 77 Harv.L.Rev. 299, 309 (1963).

Plaintiffs' motion for the convening of a three-judge court is granted. Plaintiffs' motion for summary judgment is retained for consideration by the statutory panel.