## In re AMENDMENT OF RULE 3.

United States Court of Appeals,
Ninth Circuit.

Aug. 14, 1970.

Before CHAMBERS, BARNES, HAMLEY, MERRILL, KOELSCH, BROWNING, DUNIWAY, ELY, CARTER, HUFSTEDLER, WRIGHT, KILKENNY and TRASK, Circuit Judges.

PER CURIAM:

This court has adopted, on an experimental basis, a screening procedure for the processing of appeals, including administrative reviews. The purpose of this procedure is twofold: (1) to enable the court to decide, on an expedited basis, appeals which are of such a nature that oral argument would not be of assistance to the court, and (2) to assist the court in deciding appeals in which one party is not represented by counsel, by having a law clerk prepare in each such case, in advance of submission, a research memorandum dealing with the substantial issues.

The adoption of this procedure is manifested by the following documents, copies of which are attached hereto: (1) Resolution on Screening Procedures, (2) Ninth Circuit Screening Procedure [Appendix A to the resolution], and (3) Amendment of Rule 3, Rules of the Ninth Circuit [Appendix B to the resolution]. This per curiam opinion is the Appendix C referred to in paragraph 6 of the attached resolution.

As indicated by the following table, the number of appeals (including administrative review proceedings and original writ matters) filed in this court has been steadily and substantially increasing year by year:

| Fiscal Year | Appeals Docketed |
| --- | --- |
| 1966 | 877 |
| 1967 | 935 |
| 1968 | 1,182 |
| 1969 | 1,494 |
| 1970 (estimated) | 1,600 |

(1969 Annual Report of the Director of the Administrative Office of the United States Courts, page 108).

There is every prospect that this trend will continue. Population in the nine western states included within the Ninth Circuit continues to grow. New areas of federal litigation open up every time Congress enacts major legislation or the Supreme Court announces an important new principle of procedural or substantive law.

In addition, every few years additional federal district judgships are being established in this circuit to deal with the steady increase in district court filings. It is expected that eight such judgeships will be added within the next few months under legislation which has just been enacted. Each new judgeship, when filled, results in the entering of additional judgments and orders subject to appellate review.

The court has for some time been concerned with this problem and vigorous steps have already been taken in an effort to cope with it. Argument calendars have been enlarged, a pilot program in expediting criminal appeals has been undertaken and is to be enlarged, and district judges have generously assisted us in the capacity of visiting judges. The judges of our court have made an effort to increase their individual production by writing a greater percentage of per curiam opinions.

There is a limit, however, to what can be accomplished by such measures and there is good reason to believe that, if pursued to a still greater extent, they would prove counter-productive. If the judges are calendared, month after month, to hear argument in more cases

than they can possibly dispose of, the result is simply to transfer the general court backlog of cases to a backlog of assignments for the individual judges. The futility of this is obvious. Moreover, it is a fact that heavy backlogs of assigned cases tend to slow down production. The resulting excessive time span between argument and work on the opinion can only be compensated for by additional time spent in bringing the issues of the appeal back to mind.

There may be room for some further use of district judges as visiting judges on the Ninth Circuit. Some increased use of per curiam opinions can probably also be achieved. But the maximum advantage to be gained by further steps of this kind will be more certainly achieved in connection with the utilization of a screening procedure.

As a result of practices already adopted, as described above, the Ninth Circuit has been able to increase, substantially, the number of appeals disposed of (terminated) each year. But even with this improvement in terminations it has not been possible to keep up with the filings. In fiscal 1969, for example, 1,494 appeals were docketed in this court and 1,110 cases were terminated. (1969 Annual Report, ibid., pages 108, 113.) During the four-year period between January 1, 1966 and January 1, 1970, the number of appeals pending in this court increased from 754 to 1,534, or 103.4 percent. (Report of the Director of the Administrative Office of the United States Courts for the period July 1 through December 31, 1969, page 4.)

The result has been the unavoidable growth of a backlog of cases ready for submission but which cannot yet be placed on an argument calendar. By the end of fiscal 1970 this backlog of cases of all categories, ready for argument, will approximate five hundred. This "hard core" backlog consists largely of cases having no statutory priority and which therefore must, to a considerable extent, give way to cases having priority. There are at least seventeen classes of cases which are entitled to priority in this court under various statutes and court decisions.

The Ninth Circuit is not the only one of the United States Courts of Appeals in which the judges have come to realize that additional efforts must be made to deal with this problem. Four other circuits, the Fourth, Fifth, Sixth and Tenth, have come to grips with it by adopting screening procedures. Each of these circuits reports remarkable results in the direction of coping with the nationwide phenomenon of increased volume of court of appeals filings.

The experience in the Fifth Circuit is especially impressive. Under the screening procedures employed in that circuit, only sixty to sixty-five percent of the cases which would have gone to oral argument under the former practice, are now calendared for oral argument. The time from filing the last briefs until final decision has been reduced nearly fifty percent. See Huth v. Southern Pacific Co., 417 F.2d 526, 528 n. 8, 529 (5th Cir. 1969).

It may be that one reason screening has brought such a substantial improvement in production, and time saving, in the Fifth Circuit is because the judges of that circuit maintain such scattered resident offices that normal procedures are hampered. If this be true, the Ninth Circuit is very nearly in the same situation. Of the thirteen active judges on this court five maintain their resident offices in San Francisco, one in Seattle, one in Portland, three in Los Angeles, one in San Diego, one in Tucson half of the year and in San Francisco the other half, and one in Phoenix nine months of the year and the balance in San Francisco.

The Federal Judicial Center, in seminars for circuit judges, held in Washington, D.C. last February, made a full presentation describing the screening procedures already in use, and how far they have gone to meet the workload problem. The purpose of such presentation was to encourage other circuits to invoke similar procedures. This effort by the Federal Judicial Center was in

keeping with the appeal made by Chief Justice Earl Warren on the occasion of his May, 1965, address to the American Law Institute. He there implored the bench, the bar, and the public, to exert resourceful ingenuity in the finding of ways to maintain the quality of our judicial system without squandering precious and limited judge time, on the one hand, or, on the other, numerically expanding the structure of the court to the point where it breaks down. Bros Incorporated v. W. E. Grace Mfg. Co., 351 F.2d 208, 209, n. 1 (5th Cir. 1965).[1]

The amendment of Rule 3, set out in Appendix B to the attached resolution, states in bare outline the screening procedures this court intends to put into effect.[2] The plan is set forth in more detail in Appendix A to the attached resolution.

It is appropriate to call special attention to the following considerations which we have taken into account in formulating screening procedures for this court:

1.  Due process of law does not require oral argument upon every question of law. Oral argument is required under the Constitution only if, under the circumstances of a particular case, such argument is essential to a fair hearing. In other cases an opportunity to submit argument in writing is constitutionally sufficient. As the Supreme Court said in Federal Communications Commission v. WJR, The Goodwill Station, Inc., 337 U.S. 265, 276, 69 S.Ct. 1097, 1103, 93 L.Ed. 1353 (1949):

> " * * * the right of oral argument as a matter of procedural due process varies from case to case in accordance with differing circumstances, as do other procedural regulations. Certainly the Constitution does not require oral argument in all cases where only insubstantial or frivolous questions of law, or indeed even substantial ones, are raised." [3]

2.  Under Rule 34(b), Federal Rules of Appellate Procedure, courts of appeals are expressly authorized to establish classes of cases which are not to be argued, or in which only limited argument will be permitted.

3.  No case will be placed in a category of cases to be submitted without argument unless there is, *first,* a recommendation by a law clerk that the case be so classified, and, *second,* a unanimous vote in favor of such action by a panel of three judges. Both the law clerk and the three judges will

---

1.  In Jackson v. Choate, 404 F.2d 910, 911–912 (5th Cir. 1968), Chief Judge John R. Brown, referring to "exploding" appellate dockets, said:
    " * * * this is the time for exploiting to the utmost all resources of judicial inventiveness to enhance productivity."
    See also, the observations of Will Shafroth, consultant to the Judicial Conference of the United States, in his report carried in 42 F.R.D. 243, at 273.

2.  The amendment of Rule 3 also has a secondary purpose not directly related to the adoption of screening procedures. Rule 3 pertains to oral argument of appeals. As it read prior to this amendment, each party to an appeal was entitled to oral argument even through the opposing party was proceeding in forma pauperis, without counsel, and was unavailable to personally participate in the argument.

In practice, however, where, for such reason, neither appellant nor an attorney appearing on his behalf would be present for the argument, considerations of fair play have led us to require that appellee also submit the cause without argument. The amendment to Rule 3 will formalize this practice by providing that such cases be classified in category (a) for submission without argument.

3.  The Supreme Court has not, as yet, passed upon the validity of screening procedures presently employed in other circuits. However, Judge Griffin B. Bell of the Fifth Circuit reports that the Supreme Court has twice denied certiorari in cases where the petitioner had contended that the screening procedure used in the Fifth Circuit denies due process. (Unpublished address of Judge Bell, given at February, 1970 Circuit Judge Seminars sponsored by the Federal Judicial Center, pages 12–13.)

base their actions upon an examination of the briefs and record.[4]

4. Even where a panel of judges unanimously classifies a case as suitable for submission without argument, counsel in the case may nevertheless have argument, limited to fifteen minutes on a side, by so requesting of the clerk. It is the expectation of the court that most counsel will accept the unanimous judgment of a panel that argument is not needed.

5. The sole ground upon which a case will be classified for submission without argument (subject to counsel's request for argument, as described above) will be that the questions on appeal are of such a nature that oral argument would not be of assistance to the court, and that such argument is therefore not essential to a fair hearing. Under this test it will be wholly immaterial whether either party is appealing in forma pauperis or in propria persona, or both.

6. While the contemplated screening procedures will necessarily increase, to some extent, the work of our presently-overburdened Clerk's office, every effort is to be made to hold this to a minimum.

7. The plan is necessarily experimental. The details of the plan will be changed as experience dictates. It will be abandoned if it does not prove successful, or if, for some reason, it becomes unnecessary. A judge of the court will provide personal supervision of staff operations under the plan at least during the initial stages. Even if the plan fully lives up to expectations, it will not necessarily solve the court's work load problem. Thus utilization of this screening procedure, on an experimental basis, should not foreclose the exploration, without delay, of other avenues of relief.

8. In order for the judges to have time to perform their new duties as members of screening panels, some reduction in the number of cases calendared for argument each month will be necessary. But the plan contemplates that any seeming loss of production which this will entail will be greatly outweighed by the increased terminations directly attributable to the screening procedures.

The screening procedures we have formulated have not been designed to ease the work load of the judges of this court but, will, in all probability, add to the individual work load of the judges. It is our expectation, however, that such procedures will not only substantially increase the number of appeal terminations per year and accelerate the disposition of appeals not requiring argument, but will provide time for more deliberate consideration of the many appeals of great complexity which are now coming to our court. If this end is achieved, the high goals of sound judicial administration will have been served.

Judges CHAMBERS and KILKENNY are of the view that the court should not invoke the proposed screening procedures and therefore dissent.

4. Law clerks assigned to the task by the judges for whom they work, will first examine the briefs (but not the records) in all cases for the purpose of tentatively selecting cases in which, in their opinion, oral argument will not be of assistance to the court. But before submitting a recommendation to the panel of judges in a particular case, the law clerks will also examine the record, and will prepare a memorandum discussing the substantial issues. In the process of doing so, and after examining the record, a law clerk may decide not to recommend a particular case for disposition without argument. In that event, the case will not come before the panel of judges at that time, but will be calendared for argument in due course.

Each of the three judges who will consider a law clerk's memorandum recommending disposition of a case without argument will also have before him a full set of the briefs and record.

*Resolution on Screening Procedures* *

RESOLVED: That in an effort to cope with the steadily increasing work load of this court, the following six-point plan, each point being an integral part of the whole plan, is hereby adopted on an experimental basis:

1. A four-point screening procedure for the Ninth Circuit, as set out in Appendix A, attached hereto, is adopted, effective September 1, 1970.

2. Rule 3, Rules of the Ninth Circuit, is amended, effective September 1, 1970, in the manner set out in Appendix B attached hereto.

3. When this screening procedure is in full operation, the regular monthly argument calendar for each judge shall not exceed fifteen regularly calendared cases (normally calendared three a day for five days) plus two screened cases in which limited argument is to be had at the request of counsel.

4. Each of the judges in active service, except the Chief Judge, shall, and each of the senior judges may, contribute the services of one of his law clerks for a period of three months out of each year, to serve as a member of a three-man staff of law clerks to work at the San Francisco headquarters, devoting all of their time during that period to duties pertaining to screening. Such duties shall be as described in the screening procedures set forth in Appendix A, as amplified by instructions from the judge having supervision of staff screening procedures.

5. Until the further order of the court, Judge Hamley shall have supervision of staff screening procedures.

6. In explanation of these screening procedures, and of why the court believes that they are necessary and desirable on an experimental basis, the judges of the court, except those dissenting, approve the per curiam opinion attached hereto as Appendix C, and order that it, together with any dissenting or concurring opinions, be reproduced in slip opinion form and be transmitted to West Publishing Company for publishing.

## APPENDIX A

*Ninth Circuit Screening Procedure*

1. The staff law clerks should examine the briefs in every case ready for calendaring, in such order of priority as the Clerk may determine. They should select therefrom cases which may be classified for disposition without oral argument either because: (a) one party is appearing in forma pauperis and in propria persona and will not be present to participate in the argument, or (b) the law clerks believe the questions raised on appeal are of such a nature that oral argument would not be of assistance to the court. The staff law clerks should then return to the Clerk, marked "For calendaring in due course," the briefs in cases not placed in category (a) or (b).

2. As to cases which the law clerks find fall in category (a) and not in category (b), and in all other in propria persona cases, they should prepare a memorandum (in triplicate). The law clerks should place these memoranda in three sealed envelopes, upon which the title and docket number of the case appear, and the notation "For calendaring in due course." (This could be done notwithstanding the fact that category (a) cases are to be submitted without argument because, if not placed in category (b), such a case can best be disposed of by a regular hearing panel.) The law clerks should then deliver to the Clerk the three envelopes for a particular category (a) case, together with the briefs and record for such case. The Clerk should at the time of distributing briefs and records in that case to the panel before which the case has been calendared, deliver to

* Adopted June 11, 1970, effective September 1, 1970,
Judge Chambers dissenting.

852

each judge of the panel one of the sealed envelopes described above. The members of the panel would make such use of the memoranda as they may wish.

3. As to cases which the law clerks recommend be placed in category (b), they should prepare a memorandum (in triplicate). The law clerks should then place these memoranda in three sealed envelopes upon which the title and docket number of the case appears, and the notation "For screening panel." The law clerks should then deliver the envelopes for a particular case to the Clerk, together with the record and briefs.

The Clerk should promptly deliver the memoranda, together with a set of the briefs and available record, to the then current screening panel, consisting of the three members of the motion calendar panel which acted upon the motions three weeks previously. In this manner the composition of the screening panels would change each week, just as in the case of the motion panels. Members of screening panels desiring to be excused for certain weeks would arrange their own trades as we do now on the motion panels.

If the Clerk receives from the law clerks in any one week, the envelopes in more than ten cases marked "For screening panel," he should hold back all in excess of ten, for distribution to the screening panel for the following week.

As to cases so referred to them by the Clerk, the No. 2 and No. 3 judges of the screening panel should advise the No. 1 judge, in writing, whether they approve of the law clerks' recommendation that the case referred to them by the Clerk be classified for disposition without oral argument.

If any one of the three judges disapproves of the recommendation, the No. 1 judge should so advise the other two judges and they should each then place their copy of the memorandum in a sealed envelope labeled "For calendaring in due course," and return it to the Clerk. With regard to any such case, category (a) procedure, as set out in paragraph 2

above, should then be followed. At the time the members of the screening panel return their copies of the memorandum to the Clerk they should also deliver to the Clerk their sets of the briefs and records.

4. If the members of the screening panel unanimously approve the law clerks' recommendation that the case be disposed of without argument as a category (b) case, the No. 1 judge should immediately notify the Clerk and the Clerk should send the parties notice in writing that a panel of the court is unanimously of the view that the case is suitable for submission without oral argument, but that if counsel for either side believe oral argument is needed and so notifies the Clerk within ten days, the cause shall be placed on the argument calendar, argument to be limited to fifteen minutes on a side. The screening panel should proceed to dispose of the cases which are not to be argued, by order, per curiam opinion or authored opinion, making such use of the law clerks' memoranda as they may wish. The No. 1 judge of the screening panel should, regardless of seniority, make the assignment of the case for preparation of the order or opinion.

## APPENDIX B

### Amendment of Rule 3

### Rules of the Ninth Circuit

Rule 3, Rules of the Ninth Circuit, is amended by adding a new paragraph (a), quoted below, and by renumbering the present paragraphs (a) through (d) to (b) through (e).

"(a) *Classes of cases to be submitted without oral argument, or with limited argument.* Pursuant to Rule 34(b), Federal Rules of Appellate Procedure, there is hereby established a class of cases to be submitted without oral argument except as provided below. There may be placed in this class any appeal, petition for original writ, or petition for review or enforcement of an administrative order in which (a) one party is appearing in

forma pauperis and in propria persona and will not be present to participate personally in the argument, or (b) the questions raised on appeal are, in the unanimous opinion of a panel of the court, of such a nature that oral argument would not be of assistance to the court.

"When a case has been classified for submission without oral argument the Clerk shall give the parties notice in writing of such action, provided that as to cases classified in category (b), the Clerk shall give notice that if counsel for either side believe oral argument is needed and so notifies the Clerk within ten days, the cause shall be placed on the argument calendar, argument to be limited to fifteen minutes on a side. Oral argument will be had in all other cases, as provided in the following paragraphs of this rule, except where the parties stipulate to submission without argument or where the court otherwise orders."