The **LOUISIANA AFFILIATE OF the NATIONAL ORGANIZATION FOR the REFORM OF MARIJUANA LAWS (NORML), and John Doe, on behalf of himself and all others similarly situated, Plaintiffs,**

**v.**

**Hon. William J. GUSTE, Jr., Attorney General of the State of Louisiana, et al., Defendants.**

**Civ. A. No. 74-163.**

United States District Court,
E. D. Louisiana.

March 19, 1974.

William E. Rittenberg, New Orleans, La., Peter H. Meyers, Washington, D.C., for plaintiffs.

Louis Jones, Asst. Atty. Gen., New Orleans, La., L. J. Hymel, Michael E. Ponder, Baton Rouge, La., for defendants Hon. William J. Guste, Jr. and Hon. Edwin Edwards.

John Schupp, James Carriere, Asst. U.S. Attys., New Orleans, La., for defendants William B. Saxbe and Hon. John R. Bartels.

## MEMORANDUM OF REASONS

COMISKEY, District Judge.

The plaintiffs herein have filed suit seeking declaratory and injunctive relief against the Federal Controlled Substances Act and the Louisiana Controlled Dangerous Substance Law insofar as they make the private use and possession of marijuana by adults a crime in Louisiana. The federal statutes which prohibit the possession of marijuana are contained in 21 U.S.C. § 801–904. The Louisiana provision is encompassed in LSA–R.S. 40:966.

Plaintiffs allege that these statutes violate their rights of privacy and personal liberty guaranteed by the Due Process Clause of the Fifth and Fourteenth Amendments and by the Ninth Amendment as well as constituting cruel and unusual punishment under the Eighth Amendment. They contend that these laws encroach on constitutionally protected zones of privacy since social, medical and historical facts show that there can be neither an overwhelming compelling state interest nor any possible relationship to a legitimate state interest which can justify the exercise of the police powers of the state. In addition they allege that the criminalization of the mere possession of marijuana is a violation of the equal protection clause of the Fifth and Fourteenth Amendments which constitutes invidious and arbitrary discrimination since other more potentially harmful substances such as alcohol and cigarettes are not subject to the same control.

The anonymous representative John Doe seeks to maintain a class action. Doe's identity is to be revealed to the Court in a sealed affidavit.

Presently before the Court for consideration is the propriety of the plaintiff's request for convening a three-judge court pursuant to 28 U.S.C. § 2284.

The scope of a district court's considerations when a three judge court has been requested is set out in Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U. S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed. 2d 794 (1962).

"When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three judge statute."

The present question at issue is the substantiality of the question presented. Several general principals emerge from the cases.

"The existence of a substantial question of constitutionality must be determined by the allegations of the bill of complaint."

Mosher v. Phoenix, 287 U.S. 29, 53 S. Ct. 67, 77 L.Ed. 148 (1922); Levering & Garrigues & Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062 (1933); Local U. No. 300 Amal. Meat Cutters & B. Workmen v. McCulloch, 428 F.2d 396 (5th Cir. 1970). The Supreme Court in Ex parte Poresky, 290 U.S. 30, 32, 54 S. Ct. 3, 4, 78 L.Ed.2d 152 (1933) set forth the dual standards under which substantiality must be determined.

"The question may be plainly unsubstantial, either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the

previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.' "

These two criteria have been somewhat refined by the appellate courts,

"Insubstantiality in the claim may appear because of absence of federal jurisdiction, lack of substantive merit in the constitutional claim, or because injunctive relief is otherwise unavailable. Such insubstantiality may be evident from the frivolous nature of the claim or from previous decisions of the Supreme Court which require an adverse answer." Maryland Citizens for a Rep. Gen. A. v. Governor of Md., 429 F.2d 606 (4th Cir. 1970)

In the present case the issue of jurisdiction against the federal and state defendants as well as the question of preclusion of substantiality through prior decisions is not present. The state defendants come within the provisions of 42 U.S.C. § 1983 since state action is attacked which allegedly results in the deprivation of constitutional rights. The federal defendants are covered by the issue of a federal question as alleged in the complaint under 28 U.S.C. § 1331. Although attacks on the constitutionality of these statutes have been made in criminal proceedings, research reveals no civil action for declaratory or injunctive relief in which a decision has been rendered.

The Eighth Circuit in Herald Company v. Harper, 410 F.2d 125 (8th Cir. 1969) commented on the problem of substantiality which we ourselves face in resolving this issue:

"At the outset we realize, as Judge Friendly has stated, "these tests cannot be of mathematical precision. Previous decisions do not always foreclose new considerations even though they are directly on point, as the single district judges correctly thought in convoking three-judge courts in the second flag salute case . . . and in the desegregation case. . . .

The other basis for finding lack of substantiality, obvious lack of merit, is still less precise; judges have not been fitted with identical lenses for detecting just when lack of merit is 'obviously' such." id. p. 128.

Plaintiff's causes of actions may be categorized into three general categories: 1) violation of right of privacy; 2) cruel and unusual punishment and 3) violation of equal protection of the laws.

The plaintiffs' allegation regarding privacy springs from Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). Plaintiff alleges that the concept of the constitutional right of privacy has now evolved to the point that its mere invocation raises a constitutional issue. In the recent case of Roe v. Wade, *supra,* the court said,

"The Constitution does not explicity mention any right of privacy. In a line of decisions . . . the Court has recognized that a right of personal privacy, or a guarantee of certain zones of privacy, does exist under the Constitution . . . These decisions make it clear that only personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty are included in this guarantee of personal liberty,' "

"The Court's decisions recognizing a right of privacy also acknowledge that some state regulation in areas protected by that right is appropriate. As noted above, a state may properly assert important interests in safeguarding health, in maintaining medical standards and in protecting potential life." Roe, supra p. 726, 727

Plaintiff in the present case bases his claim to privacy on a far too expansive interpretation of this phrase. The present case does not rest its roots in the First Amendment, Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), in the Fourth and Fifth Amendment, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889

(1968), Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), in penumbras of the Bill of Rights, Griswold v. Connecticut, 381 U. S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) or in the concept of liberty guaranteed by the first section of the Fourteenth Amendment. All of the above cases have involved concepts of basic and fundamental rights such as the right to marry, to bear children, to think and read what one wishes, to worship God according to the dictates of his conscience, to acquire useful knowledge. Even Roe and Doe came within these basic provisions and to a large extent are no more than a logical extension of the Griswold philosophy of marital privacy as applied to women. Plaintiffs' claim in the present case rests on bare allegations of a general right to privacy to do what one wishes in his own home and with his own body. Although plaintiff does claim enforcement of this right of privacy through the Fifth and Fourteenth Amendment and through the Ninth Amendment he does not ground it or even attempt to ground it on any one of the amendments which protect certain guaranteed rights and which in doing so create constitutionally guarded zones of privacy. The right of plaintiff to possess marijuana in his own home can under no factual or legal interpretation be classified as fundamental or implicit in the concept of ordered liberty.

The Supreme Court in Stanley v. Georgia, supra, the very case relied on so strongly by plaintiff, qualified its approval of private possession of obscene material with the following:

"What we have said in no way infringes upon the power of the State or Federal Government to make possession of other items such as narcotics, firearms, or stolen goods, a crime. Our holding in the present case turns upon the Georgia statute's infringement of fundamental liberty protected by the First and Fourteenth Amendments. No First Amendment rights are involved in most statutes making mere possession criminal." Stanley,

footnote 11 at 394 U.S. at 568, 89 S.Ct. at 1249, 22 L.Ed.2d at 551.

The Fifth Circuit in United States Drotar, 416 F.2d 914 (5th Cir. 1969) used this very expression of the Supreme Court in Stanley, to uphold an attack on the constitutionality of a guilty plea under the now repealed provision of 26 U. S.C. § 4741(a) in violation of 26 U.S.C. 4744(a)(1) for possession of marijuana without payment of the tax imposed by law. The court's reasoning in Drotar reflects the part "fundamental liberties" plays in defining the concept of privacy.

However, conceding that plaintiff's right to possess is fundamental even Roe and Doe recognized that they may be curtailed by "compelling state interest", Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 728, 35 L.Ed.2d 147 (1973). 21 U.S.C. § 801 and LSA–R.S. 40:962 expresses the state interest behind the federal and state prohibitions.

"The Congress makes the following findings and declarations:

(1) Many of the drugs included within this subchapter have a useful and legitimate medical purpose and are necessary to maintain the health and general welfare of the American people.

(2) The illegal importation, manufacture, distribution and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people." 21 U.S.C. § 801(1) & (2)

The legislative intent of the state in controlling dangerous drugs is found in the criteria set out in LSA–R.S. 40:962(A)(1–8) and in LSA–R.S. 40:963(A). The fact that they are addressed to the State Board of Health reflects the considerations which moved the Louisiana legislature to control dangerous drugs:

"In making such a determination the State Board of Health shall consider the following:

(1) Its actual or relative potential for abuse;

(2) Scientific evidence of its pharmacological effect, if known;

(3) State of current scientific knowledge regarding the substance;

(4) Its history and current pattern of abuse;

(5) The scope, duration and significance of abuse;

(6) What, if any, risk there is to public health;

(7) Its psychic or physiological dependence liability; and

(8) Whether the substance is an immediate precursor of a substance already controlled by this section.

"In determining that a substance is to be added to these schedules, the State Board of Health shall find the following:

A. As to Schedule I:

(1) The drug or other substance has a high potential for abuse;

(2) The drug or other substance has no currently accepted medical use in treatment in the United States;

(3) There is a lack of accepted safety for use of the drug or other substance under medical supervision."

Plaintiff alleges that this reasoning is incorrect by virtue of recent scientific findings and investigations and urges this court to upset this specific finding of the legislature. In order for the court to do this it would be necessary for this court to substitute its judgment based on social, economic, historical and scientific evidence for that of the respective legislatures. The Supreme Court has specifically turned away from such an approach in Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). Congress and the state legislature have both found it necessary for general health and welfare to regulate the use and possession of dangerous drugs. This court is in no position to substitute its judgment for that of the legislature.

■ Plaintiffs also contend that the criminal sanctions imposed for the possession and use of marijuana constitute cruel and unusual punishment under the Eighth Amendment. Plaintiff's allegation under this cause of action has validity only if the conduct proscribed is disproportionate to the offense, Kasper v. Brittain, 245 F.2d 92 (6th Cir. 1957), cert. den. 355 U.S. 834, 78 S.Ct. 54, 2 L. Ed.2d 46 (1957), reh. den., 355 U.S. 886, 78 S.Ct. 147, 2 L.Ed. 115 (1957). The punishment becomes disproportionate only if the conduct should not be proscribed or only if the punishment is clearly arbitrary and without rational relationship to the crime. Since the court finds that the conduct is legitimately proscribed by the legislatures and that it encompasses no fundamental right the Eighth Amendment argument has no validity.

■■ Plaintiff rests finally on the prohibitions of equal protection. Plaintiff alleges that invidious discrimination is present since no rational basis exists for treating marijuana different from cigarettes or alcohol. Classification becomes unreasonable only when they are arbitrary and rest upon no rational basis, Lindsley v. National Carbonic Gas Company, 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911), Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957). The legislatures, both federal and state, rest their distinction in treatment on their obligation and authority to legislate for the public health and welfare. It is only by substituting a judicial judgment that this is incorrect that these statutes can be overturned, see *Ferguson,* supra.

The Fifth Circuit's admonition in Jackson v. Choaté, 404 F.2d 910 (5th Cir. 1968)

"Except for cases on which there can be no doubt at all, the alternatives to certification and constituting of a 3-Judge court as unsatisfactory and administratively disadvantageous with no compensating redeeming virtue of a substantive kind." Jackson p. 912.

"In this day and time of dynamic expansion of constitutional principles and their application to new and sometimes unheard of situations it takes judicial prescience of a delphic order to say with certainty that the attack is insubstantial. It is the better course—certainly from an administrative standpoint—to forego the doubts, constitute a 3-Judge Court, and allow that court to determine initially this and other issues." Jackson, p. 913.

is not applicable under the circumstances of the present case.

■ The plaintiff's request for the convening of a three judge court is hereby and the same denied for lack of a substantial federal question since the allegations are plainly without merit. The right to possess and use marijuana in one's own home is not and cannot be classified as a fundamental right protected by a constitutional zone of privacy.